UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CHRIS ALLEN MILLER,<br><br>                    Petitioner,<br><br>         vs.<br><br>DARIN YOUNG, WARDEN; AND<br>MARTY J. JACKLEY, ATTORNEY<br>GENERAL;<br><br>                    Respondents. | 4:18-CV-04137-KES<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

Chris Allen Miller, an inmate in a South Dakota state prison pursuant to a state court judgment of conviction, brings this *pro se* petition for habeas relief pursuant to 28 U.S.C. § 2254.  See Docket No. 1.  Respondents now move to dismiss that petition in its entirety.  See Docket No. 11.  Mr. Miller resists the motion.  See Docket No. 12.  This matter has been referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

**FACTS**

**A.    The Trial**

The following facts are pertinent to the claims Mr. Miller presents to this court.  Mr. Miller was charged with second-degree murder and aggravated assault in connection with the death of his infant son.  He availed himself of

his right to a jury trial.  At the trial during jury selection, the trial court intended to allow each side to have 22 peremptory strikes.  State law allows for the parties to each have 20 peremptory strikes and a motion from one of the parties is necessary before the court can allow peremptory strikes in excess of 20.  See SDCL § 23A-20-20.[1]  Neither party had moved for additional peremptory strikes, so the court's allowance of 22 strikes per side was contrary to state law.  Defense counsel did not object to this.

In addition to the total 44 peremptory strikes, the court intended to seat 3 alternates in addition to the necessary 12 jurors.  The court intended to furnish to the lawyers a list of 59 potential jurors from which to exercise their peremptory strikes.  After striking 44 persons, the court and parties should have been left with the names of 15 jurors—12 primary jurors and 3 alternates.  Instead, the court mistakenly submitted a list of 60 names to the lawyers and then left the courtroom while peremptory challenges were struck.  Defense counsel did not object to the court leaving the courtroom during the strikedown.

After the lawyers finished striking their collective 44 names from the list, they discovered there were 16, not 15, names remaining.  They advised the court.  The court took testimony from the lawyers.  The prosecutor had used one of his peremptory strikes on the 60th name on the list.  Had the 60th name

---

[1] SDCL § 23A-20-20 provides:  "If an offense is a Class A, Class B, Class C, or Class 1 felony, the prosecution and the defense each have twenty peremptory challenges.  In all other cases, the prosecution and the defense each have ten peremptory challenges.  In misdemeanor cases, the prosecution and the defense each have three peremptory challenges."

on the list not been there, the prosecutor testified he would have used that strike on another name on the list. The court decided to allow the prosecutor one additional peremptory strike from the 16 remaining names. JT at pp. 426-28. Defense counsel objected to this procedure, but did not offer up any alternative procedure. The prosecutor struck one additional name and the remaining 15 jurors were selected for service.

At the inception of the trial, the court gave preliminary instructions to the jury. Among those was an instruction that the jury should pay close attention to the testimony as it was presented. The court allowed the jury to take notes during the trial, but advised them that they would not have a written transcript to consult during deliberations and that the court reporter would not be required to read back lengthy testimony. See State Criminal File p. 674 (p. 808 in the electronic file transmitted to this court).

After all the evidence had been presented and the case was submitted to the jury, they sent a note to the trial court reading as follows: "Can we listen to Exhibit Number 1, the 911 call, please?" See Jury Trial Transcript (JT) at p. 2084. The prosecutor recommended the court instruct the jury that they would not be allowed to listen to the evidence again. Id. Defense counsel agreed. Id. at p. 2085. The court then ruled:

> The court has always had the position that media that is played in the courtroom will not, although it is an Exhibit, it goes back to the jury room, will not be played to the jury. The reason is that it enhances that evidence over other testimony because it generally is testimonial in nature, and so the court's position is not to allow the playing of that.

3

> I am going to indicate to them, I'm dating the response and saying
> you need to remember the evidence as presented in the courtroom.

Id.

Mr. Miller was convicted of second-degree murder and aggravated assault. He was sentenced to life imprisonment on the murder charge and 50 years' imprisonment on the assault charge, both sentences to be carried out consecutively.

## B.    The Direct Appeal

He appealed his conviction to the South Dakota Supreme Court, which affirmed. State v. Miller, 851 N.W.2d 703 (S.D. 2014). Mr. Miller had raised three issues on appeal, but the court only decided two issues on the merits, concluding Mr. Miller had waived the third issue. Id. at 705. The two issues decided on the merits were (1) whether sufficient evidence was introduced at the trial to support the second-degree murder verdict and (2) whether the trial court abused its discretion in admitting testimony from Billy Chaffin, a cell mate of Mr. Miller's when both were in jail. Id.[2] The court affirmed the trial court on both issues. Id. at 706-11.

## C.    State Habeas Proceedings

### 1.    Circuit Court

Following the affirmance of his conviction, Mr. Miller filed a habeas petition in state court raising the following issues:

    1.    Mr. Miller's aggravated assault conviction should be vacated.

---

[2] The third issue which the court held Mr. Miller had waived was whether the trial court coerced the jury verdict. Miller, 851 N.W.2d at 705.

2.      The trial court's allowance of prior bad acts evidence was unfairly prejudicial.

3.      The admission of Billy Chaffin's testimony was more prejudicial than probative.

4.      The trial court violated Mr. Miller's constitutional rights in jury selection.

5.      Prosecutorial misconduct/witness interference.

6.      The trial court erred in refusing the jury's request to listen again to the recording of the 911 call while the jury was deliberating.

7.      Ineffective assistance of counsel in the following respects:

    a.      failure to object to trial court's method of jury selection;

    b.      failure to call as witnesses Rocky Miller, Tammy Miller, James Fowler, Ron Sudbeck, and Velma Sudbeck;

    c.      failure to object to the trial court's coercion of the jury;

    d.      failure to request credit for time served at sentencing;

    e.      failure to appeal issues and stay in contact with Mr. Miller;

    f.      failure to advise of right to appeal to the United States Supreme Court from the South Dakota Supreme Court's decision on direct appeal;

    g.      trial counsel's use of alcohol and breakdown;

    h.      trial counsel failed to introduce into evidence photos taken by the South Dakota Division of Criminal Investigation (DCI) of Mr. Miller's hands and knuckles;

    i.      failure to ensure defense expert was able to listen to the state's testimony and use for rebuttal;

    j.      failure to pursue alternative theories of law/injury.

<u>See</u> State Court Habeas File (HF), pp. 11-21, 51-66, 162-442, 575-967.[3]

The state habeas judge denied relief on all these counts.  HF at pp. 525-62, 1034-98.[4]  Mr. Miller submitted an application for a certificate of probable cause on only three issues:  (1) the trial court's method of selecting the jury, (2) trial counsel's failure to object to this issue, and (3) the trial court's denial of the jury's request to listen to the recording of the 911 call during deliberations.  The state habeas court granted the certificate of probable cause as to the first two issues, but denied the request as to the 911 call.  Mr. Miller did not separately seek a certificate of probable cause from the South Dakota Supreme Court on the 911 call issue.

### 2.    State Supreme Court

The South Dakota Supreme Court denied habeas relief on the merits.  <u>See</u> <u>Miller v. Young</u>, 911 N.W.2d 644 (S.D. 2018).  The Supreme Court agreed with the state habeas court that the trial court had erred in granting both sides two extra peremptory challenges without a motion or good cause, in presenting the attorneys with a list of 60 names instead of 59, and in granting the prosecution an extra peremptory challenge after it was discovered there where 16 instead of 15 names remaining.  <u>Id.</u> at 649.  The former violated SDCL

---

[3] Mr. Miller filed a *pro se* petition, then his habeas counsel filed an amended petition, and then several additional claims were added during the evidentiary hearing held on Mr. Miller's amended habeas petition.  This list of issues is garnered from each of those sources.

[4]The state habeas court ruled on most of Mr. Miller's claims orally.  <u>See</u> HF at pp. 525-62.  The jury selection issue was ruled on in writing.  <u>See</u> HF at pp. 1034-98.

§ 23A-20-20 and the latter violated SDCL § 23A-20-25.  Id. at 647-49.  The court held that the error would only result in a fundamentally unfair trial, and thus lead to habeas relief, if it were a structural error.  Id. at 649.

Distinguishing its prior decision in State v. Blem, 610 N.W.2d 803 (S.D. 2000), the court concluded the error was not a structural error.  Id. at 648-50. The court applied Supreme Court case law and set forth six types of errors that are recognized to be structural error.  Id. at 648 (citing Neder v. United States, 527 U.S. 1, 14 (1999)).  The court noted that Mr. Miller's alleged error did not fit within any of the six categories.  Id.

Furthermore, the trial court's failure to comply with jury selection statutes did not "deny Miller the opportunity to demonstrate that jurors were biased" nor did the errors "negate the 'objective procedures' that 'secure a defendant's fundamental right to an impartial jury.' "  Id. at 649 (quoting Montana v. LaMere, 2 P.3d 204, 213 (Mont. 2000)).  This was because the errors by the trial court did not "threaten the goals of random [jury] selection and objective disqualification" nor did the errors "convert the jury into an *ultra vires* tribunal."  Id. at 650 (quoting first State v. Bearchild, 103 P.3d 1006, 1009 (Mont. 2004), and second Rivera v. Illinois, 556 U.S. 148, 162 (2009)). The court noted the United States Supreme Court decided in Rivera that states could, consistent with the United States Constitution, decide that a trial court's denial of a peremptory challenge is reversible *per se*, or is harmless error.  Id. (citing Rivera, 556 U.S. at 162).

7

In Mr. Miller's case, the court noted, unlike in the Blem and LaMere cases, all the jurors on the list had already been questioned by both sides and passed for cause.  Id.  Therefore, "the parties were able to 'eliminate as far as possible the vagaries of human subjectivity and arbitrariness from the jury selection process.' "  Id. (quoting LaMere, 2 P.3d at 214).

Having determined there was no structural error, the court then analyzed whether the errors were harmless.  Id. at 650-51.  Applying United States Supreme Court case law, the South Dakota Supreme Court held the errors were harmless.  Id. (discussing Rivera, 556 U.S. at 159; United States v. Martinez-Salazar, 528 U.S. 304, 316 (2000)).  The court held Mr. Miller failed to demonstrate that the twelve citizens who heard the evidence in his case and rendered a verdict were not impartial.  Id. at 651.

Lastly, the court addressed Mr. Miller's ineffective assistance claim stemming from his trial counsel's failure to object to the granting of 22 peremptory challenges, failure to object to the presence of 60 potential jurors on the strikedown list, failure to offer up an alternative solution to the court's proposal that the prosecutor should strike one more name from the list in addition to the 22 he had already struck, and failure to raise the issue of the anomalous jury selection on appeal.  Id.   The court rejected this claim, too, stating that Mr. Miller had failed to overcome the strong presumption that counsel's performance fell "within the wide range of professional assistance." Id.

**D.    Mr. Miller's Federal Habeas Petition**

Thereafter, Mr. Miller filed his petition for habeas relief with this court pursuant to 28 U.S.C. § 2254.

Mr. Miller asserts the following claims in this federal habeas petition:

1.    The circuit court judge violated Federal Rule of Criminal Procedure 24 by using an amended process for jury selection.

2.    Ineffective assistance of trial counsel in the following seven respects:

   a.    failure to move to strike the entire jury panel after a potential juror made comments about a potential witness' honesty;

   b.    failure to call witnesses on Mr. Miller's behalf;

   c.    failure to object to the trial court's allowing the jury to continue to deliberate instead of being sequestered;

   d.    failure to request a sentence of time served;

   e.    failure to raise on appeal the issue as to the court's jury selection and the admission of prior bad acts;

   f.    failure to present at trial alternate theories on how injuries to the victim could have occurred;

   g.    failure to object when the trial court refused to allow the jury to listen to the recording of the 911 call again.

3.    The circuit court erred by denying the jury's request to listen to the recording of the 911 call again.

4.    Ineffective assistance of state habeas counsel in failing to raise the issue of the jury's request to re-listen to the 911 call.

5.    The state court habeas judge was biased, had stated she was friends with the trial court who had presided over Mr. Miller's jury trial and that she would recuse herself if the trial court were called as a witness in the habeas proceedings.

6.    The state trial court was biased as evidenced by giving advantage to the prosecutor, altering the path of the trial, giving the jury

9

> advance notice they were about to be sequestered, knowingly
> breaking laws to keep the trial moving forward, and willfully
> excluding evidence.

See Docket No. 1 at pp. 5-8.[5]

Respondents now move to dismiss all of Mr. Miller's habeas claims without holding an evidentiary hearing.  See Docket No. 11.  Mr. Miller resists the motion.  See Docket No. 12.

### DISCUSSION

### A.    Standard Applicable to a Motion to Dismiss

The respondents' motion to dismiss invokes FED. R. CIV. P. 12(b)(6), which allows dismissal if the petitioner has failed to state a claim upon which relief can be granted.  There are two "working principles" that apply to Rule 12(b)(6) motions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a petition.  Id. (citing Papasan, 478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).  Rule 8, which requires a short plain statement of the claim, "does not unlock the doors of discovery for a [petitioner] armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79.

Second, the claim must be plausible on its face.  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plausibility standard is a "context-

---

[5] Grounds 3, 4 & 5 were all presented together in Ground III of Mr. Miller's habeas petition.  Because they concern discrete actions by different actors, the court has set them forth herein as separate counts.

specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the petitioner's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*--but has not "show[n]"--that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

*Pro se* petitions are to be liberally construed.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004).  However, even with liberal construction, "a *pro se* complaint must contain specific facts supporting its conclusions."  Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985); Ellis v. City of Minneapolis, 518 F. Appx. 502, 504 (8th Cir. 2013).  *Pro se* pleadings cannot be merely conclusory.  Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993); Parker v. Porter, 221 Fed. Appx. 481, 482 (8th Cir. 2007).

Rule 12(b)(6) requires the court to evaluate the sufficiency of a plaintiff's pleading of a claim in his or her complaint.  See FED. R. CIV. P. 12(b)(6); Iqbal, 556 U.S. at 679.  But courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating the complaint.  Dittmer Properties, L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).  They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  Id. (citing

11

Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)

(quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure

§ 1357 (3d ed. 2004))).  Here, the court has considered and taken judicial

notice of the state court files in Mr. Miller's underlying criminal and habeas

cases.  See Hood v. United States, 152 F.2d 431 (8th Cir. 1946) (federal district

court may take judicial notice of proceedings from another federal district court);

Matter of Phillips, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take

judicial notice of state court pleadings); Green v. White, 616 F.2d 1054 (8th Cir.

1980) (court of appeals may take judicial notice of district court filings).

**B.      Principles Generally Applicable to § 2254 Petitions.**

A state prisoner like Mr. Miller who believes he is incarcerated in

violation of the Constitution or laws of  the United States may file a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  Such petitions are governed by

the Anti-Terrorism and Effective Death Penalty Act (AEDPA).

Under AEDPA, federal courts may exercise only a "limited and deferential

review of underlying state court decisions."  Osborne v. Purkett, 411 F.3d 911,

914 (8th Cir. 2005).  A federal court may not grant a writ of habeas corpus

unless the state court's adjudication of a claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established

Federal law."  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to"

clearly established federal law if it "applies a rule that contradicts the governing

law set forth in Supreme Court cases or if it confronts a set of facts that are

materially indistinguishable from a decision of the Court and nevertheless

12

arrives at a result different from the Court's precedent." <u>Williams v. Taylor</u>,

529 U.S. 362, 405-06, (2000).  A federal habeas court may not issue the writ

merely because it concludes the state court applied the clearly established

federal law erroneously or incorrectly.  <u>Id.</u> at 411. "Rather, that application

must also be *unreasonable*." <u>Id.</u> (emphasis added).

The state court's factual findings are presumed to be correct, and a

federal habeas court may not disregard the presumption unless specific

statutory exceptions are met.  <u>Thatsaphone v. Weber</u>, 137 F.3d 1041, 1045

(8th Cir. 1998); 28 U.S.C. § 2254(e).  A federal habeas court "may not simply

disagree with the state court's factual determinations.   Instead it must

conclude that the state court's findings lacked even fair support in the record."

<u>Marshall v. Lonberger</u>, 459 U.S. 422, 432 (1983).

**C.    State Court Exhaustion.**

Under ADEPA, federal habeas review of state court convictions is limited

to claims the petitioner previously presented to the state courts for

consideration:

> (b)(1) An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted unless it appears that—
>> (A) the applicant has exhausted the remedies available in the
>>    courts of the state; or
>> (B)  (i) there is an absence of available State corrective
>>        process; or
>>     (ii) circumstances exist that render such process
>>         ineffective to protect the rights of the applicant.
> * * *
> (c) An applicant shall not be deemed to have exhausted the
> remedies available in the courts of the State, within the meaning of
> this section, if he has the right under the law of the State to raise,
> by any available procedure, the question presented.

<u>See</u> 28 U.S.C. § 2254(b) and (c).

 "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).  If a ground for relief in the petitioner's claim makes factual or legal arguments that were not present in the petitioner's state claim, then the ground is not exhausted. <u>Kenley v. Armontrout</u>, 937 F.2d 1298, 1302 (8th Cir. 1991).  The exhaustion doctrine protects the state courts' role in enforcing federal law and prevents the disruption of state judicial proceedings.  <u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1982).

> The Supreme Court has stated:
>
> Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

<u>Rose</u>, 455 U.S. at 518 (citation omitted).

The exhaustion rule requires state prisoners to seek complete relief on all claims in state court prior to filing a writ of habeas corpus in federal court. Federal courts should, therefore, dismiss a petition for a writ of habeas corpus that contains claims that the petitioner did not exhaust at the state level.  <u>See</u> 28 U.S.C. § 2254; <u>Rose</u>, 455 U.S. at 522.  The exhaustion requirement is

waived "only in rare cases where exceptional circumstances of peculiar urgency are shown to exist." Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995).

A federal court must determine whether the petitioner fairly presented an issue to the state courts in a federal constitutional context. Satter v. Leapley, 977 F.2d 1259, 1262 (8th Cir. 1992). "To satisfy exhaustion requirements, a habeas petitioner who has, on direct appeal, raised a claim that is decided on its merits need not raise it again in a state post-conviction proceeding." Id.

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993).

Fairly presenting a federal claim requires more than simply going through the state courts:

> The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

Picard v. Connor, 404 U.S. 270, 276 (1971). It is also not enough for the petitioner to assert facts necessary to support a federal claim or to assert a similar state-law claim. Ashker, 5 F.3d at 1179. The petitioner must present both the factual and federal legal premises of the federal claims to the state

15

court.  Smittie v. Lockhart, 843 F.2d 295 at 297 (8th Cir. 1988) (citation omitted).  "The petitioner must 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.' "  Ashker, 5 F.3d at 1179.  This does not, however, require petitioner to cite "book and verse on the federal constitution."  Picard, 404 U.S. at 278 (citing Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)).  The petitioner must simply make apparent the constitutional substance of the claim.  Satter, 977 F.2d at 1262.

Although Mr. Miller went through one complete round of trial-court-to-appellate-court review on his application for habeas relief, he completely exhausted state remedies on only two habeas issues:  (1) whether the trial court violated his Constitutional rights during jury selection, and (2) whether trial counsel was ineffective for failing to object contemporaneously to that jury selection and for failing to raise the jury selection issue on direct appeal.

As to the 911 call issue, Mr. Miller sought a certificate of probable cause from the circuit court on that issue.  But when the circuit court denied a certificate of probable cause as to the 911 call issue, Mr. Miller did not then seek a certificate of probable cause from the South Dakota Supreme Court as to that issue.  The issue of the jury's request to listen again to the 911 call is not, therefore, exhausted, because it was never presented at the appellate level.

The other eight issues raised by Mr. Miller in his federal petition (issues number herein 2a-d & f, 4, 5, & 6), are completely unexhausted.  Mr. Miller never sought a certificate of probable cause on any of these issues before either

16

the circuit court or the South Dakota Supreme Court.  Mr. Miller's failure to

pursue review of these issues prevented him from giving the state courts "one

full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process" as to these grounds.

O'Sullivan, 526 U.S. at 845; Wiegers v. Weber, 37 Fed. Appx. 218, 219-20 (8th

Cir. 2002) (unpublished) (prisoner's failure to timely appeal denial of state

habeas resulted in failure to give South Dakota one full opportunity to resolve

any constitutional issue by invoking one complete round of South Dakota's

established appellate process).

Because he did not request a certificate of probable cause from the

circuit court and from the South Dakota Supreme Court on these eight

grounds in his federal habeas petition, Mr. Miller has failed to properly exhaust

these issues.  The time for doing so has long since passed.  See SDCL § 21-27-

18.1 (30 days after denial of habeas relief allowed for seeking a certificate of

probable cause from the circuit court or 20 days from the circuit court's denial

of a certificate to petition the supreme court).[6]  Mr. Miller has no non-futile

---

[6] SDCL § 21-27-18.1 provides in pertinent part:

> A final judgment or order entered under this chapter may not be
> reviewed by the Supreme Court of this state on appeal unless the
> circuit judge who renders the judgment or a justice of the Supreme
> Court issues a certificate of probable cause that an appealable
> issue exists.  A motion seeking issuance of a certificate of probable
> cause shall be filed within thirty days from the date the final
> judgment or order is entered.  The issuance or refusal to issue a
> certificate of probable cause is not appealable.  However, a party
> may, upon the circuit court judge's refusal to issue a certificate of
> probable cause, file a separate motion for issuance of a certificate

remedy available in state court to now exhaust these grounds.  Therefore, the court turns to the issue of procedural default.

**D.    Procedural Default.**

**1.    The Eight Claims Not Contained in Mr. Miller's Request for a Certificate of Probable Cause**

Closely related to the doctrine of state court exhaustion is the doctrine of procedural default.  While the exhaustion rule asks *whether* a petitioner has exhausted his remedies in state court, the procedural default rule asks whether the petitioner has *properly* exhausted those remedies—"whether he has fairly presented his claims to the state courts."  O'Sullivan, 526 U.S. at 848.

Procedural default is sometimes called the "adequate and independent state grounds" doctrine.  A federal habeas petitioner who has defaulted his federal claims in state court by failing to meet the state's procedural rules for presenting those claims has committed "procedural default."  Coleman v. Thompson, 501 U.S. 722, 731-32, 735 n.1. (1991).  If federal courts allowed such claims to be heard in federal court, they would be allowing habeas petitioners to perform an "end run" around state procedural rules.  Id. However, where no further non-futile remedy exists in state court, it is not feasible to require the petitioner to return to state court as would be the case in

---

of probable cause with the Supreme Court within twenty days of the entry of the circuit judge's refusal. . . .

See SDCL § 21-27-18.1.

18

a dismissal for failure to exhaust state remedies.  See also Ruiz v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995) ("A district court need not consider the merits of a procedurally defaulted claim.") (citations omitted).

"Adequate and independent state grounds" exist for the state court's decision if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment. Coleman, 501 U.S. at 729.  "This rule applies whether the state law ground is substantive or procedural."  Id. at 729.  "[A] state procedural ground is not adequate unless the procedural rule is strictly or regularly followed."  Johnson v. Mississippi, 486 U.S. 578, 587 (1988).

Both exhaustion and procedural default are animated by the same principles of comity—that is, in our dual system of government, federal courts should defer action on habeas matters before them when to act on those petitions would undermine the state courts' authority, which have equal obligations to uphold the constitution.  See Coleman, 501 U.S. at 731 (quoting Rose, 455 U.S. at 518), overruled in part on other grounds by Martinez v. Ryan, 566 U.S. 1, 9 (2012).[7]

In the Coleman case, the habeas petitioner, Coleman, had defaulted all of his federal claims by filing his notice of appeal from the state trial court three

---

[7] The exception provided under Martinez is discussed in more detail infra.  The Shepard's Citation service on Westlaw states that Martinez was superseded in part on other grounds by statute as recognized in Duncan v. Atchison, 2014 WL 4062737 (N.D. Ill. Aug. 13, 2014).  The court is dubious of that holding, but need not address it in the context of Mr. Miller's claims herein.

days late.  <u>Coleman</u>, 501 U.S. at 727-28, 749.  The state appellate court then refused to hear Coleman's appeal on the basis of his late-filed notice of appeal. <u>Id.</u> at 740.  The Court held "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  <u>Id.</u> at 750.  A showing of cause and prejudice, however, "may serve to excuse a procedural default and open the door to federal review of an applicant's otherwise defaulted claim."  <u>Wooten v. Norris</u>, 578 F.3d 767, 777 (8th Cir. 2009).

To fit within the fundamental miscarriage of justice exception, the petitioner must make a showing of actual innocence.  <u>Schlup v. Delo</u>, 513 U.S. 298, 321, (1995).   A successful claim of actual innocence requires the petitioner to support his allegations with new, reliable evidence.  <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1351 (8th Cir. 1997).

"The federal court looks to the last, reasoned state court opinion dealing with the claim to determine whether a specific contention is procedurally defaulted.  If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar that might otherwise have been available."  <u>Clemons v. Luebbers</u>, 381 F.3d 744, 750 (8th Cir. 2004) (citations omitted).

20

The last reasoned state court opinion addressing Mr. Miller's state habeas claims was from the South Dakota Supreme Court in 2018. That court addressed the two claims referenced above: whether the trial court erred in jury selection and whether counsel was ineffective for failing to object and to appeal as to that issue. The issues Mr. Miller raises in this federal petition identified above in this opinion as 2a-d & f, 4, 5, & 6 are not encompassed in this same issue. Nor were these grounds raised by Mr. Miller on direct appeal. Thus, these eight grounds are procedurally defaulted. It is Mr. Miller's burden, then, to establish cause and prejudice to excuse his procedural default.

Mr. Miller has not established cause and prejudice as to these eight claims. In response to respondents' motion to dismiss, he merely urges the merit of his claims. See Docket No. 12. He asks the court to read all the transcripts of all the trial and habeas hearings in state court and asserts this court will then see that his issues have merit. Id. But the question presented by respondents' motion to dismiss is not whether these eight claims are meritorious. The question is whether they are procedurally defaulted. They are. The question then becomes whether there is cause and prejudice to excuse the default. It is Mr. Miller's burden to establish cause and prejudice. He fails entirely to do so. See id. As to these eight claims, then, the court recommends granting respondents' motion to dismiss.

## 2. The 911 Call Claim

The claim that the trial court erred in refusing the jury's request to listen for a second time to the 911 call is also procedurally defaulted because

Mr. Miller did not seek a certificate of probable cause on this issue before the South Dakota Supreme Court.  It is now too late for him to do so.

In stating this claim, Mr. Miller writes in his habeas petition, "[t]his may also be inefective [sic] habeas counsel.  Habeas counsel was very supportive and still is.  However, no case law was argued to keep the 911 tapes as part of the habeas."  <u>See</u> Docket No. 1 at p. 7.  Under certain circumstances, ineffective assistance of habeas counsel can provide the necessary cause to excuse a procedural default.  However, this is not one of those circumstances.

If a prisoner cannot raise a claim of ineffective assistance of counsel in his direct appeal, and he was not given counsel in state habeas proceedings--or his state habeas counsel was himself ineffective--then procedural default does not bar a federal habeas court from hearing the prisoner's ineffective assistance claims.  <u>Martinez</u>, 566 U.S. at 14.  The <u>Martinez</u> Court recognized a narrow exception to the unqualified statement in <u>Coleman</u>, 501 U.S. 722, to the effect that the ineffectiveness of state habeas counsel does not provide cause to excuse a procedural default.

The <u>Martinez</u> Court held that inadequate assistance of counsel at the state habeas proceedings may establish cause.  <u>Martinez</u>, 566 U.S. at 14.  The Court distinguished <u>Coleman</u> on the basis that the error of the state habeas lawyer in that case was *on appeal* from the trial state habeas court's decision.  <u>Id.</u> at 10-11.  This is different than making an error *before the state trial habeas court itself*, rather than before an appellate state habeas court.  <u>Id.</u> at 10-13.

In <u>Davila v. Davis</u>, ___ U.S. ___, 137 S. Ct. 2058, 2062-63 (2017), the Court refused to extend <u>Martinez</u> to errors of appellate counsel on direct appeal.  The <u>Martinez</u> exception is a narrow one and applies only to errors of trial counsel.  <u>Id.</u> at 2065.  In <u>Davila</u>, trial counsel objected to a jury instruction which the trial court overruled and gave to the jury.  <u>Id.</u> at 2063.  Appellate counsel failed to raise as error on appeal the giving of the instruction.  <u>Id.</u> Habeas counsel then failed to raise as error either (1) the giving of the instruction itself or (2) the appellate counsel ineffective assistance claim for failing to raise it as error on appeal.  <u>Id.</u>

The <u>Davila</u> decision contains an interesting passage summarizing the underpinnings of <u>Coleman</u> and <u>Martinez</u>:

> It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel.  An error amounting to constitutionally ineffective assistance is "imputed to the State" and is therefore external to the prisoner.  Attorney error that does not violate the Constitution, however, is attributed to the prisoner "under well-settled principles of agency law."  It follows, then, that in proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default [because such error is not of a Constitutional magnitude].  Thus, in <u>Coleman</u>, this Court held that attorney error committed in the course of state postconviction proceedings—for which the Constitution does not guarantee the right to counsel—cannot supply cause to excuse a procedural default that occurs in those proceedings.

<u>Id.</u> at 2065 (citations omitted).

The <u>Davila</u> Court held that <u>Martinez</u> created a narrow exception to <u>Coleman</u> that applied only where (1) ineffective assistance of counsel claims could not be raised on direct appeal, or the state's framework made it very

23

unlikely such claims could be heard on direct appeal, and (2) state habeas counsel was itself ineffective in failing to raise an error of state *trial* counsel. Id. This rule would not be expanded to errors of state *appellate* counsel on direct appeal. Id. In so holding, the Court noted that the Constitution twice guarantees the right to a criminal trial, but never guarantees a right to an appeal at all. Id. at 2066-67. The criminal trial was the "main event" at which a defendant's rights are determined. Id. The appeal, by contrast, is marked by deference to both the judge's and the jury's decisions. Id.

Here, the court notes the first obstacle to Mr. Miller using Martinez to provide "cause" for procedurally defaulting on the 911 call issue is that Martinez only applies to claims of ineffective assistance of trial counsel. The reason why ineffective habeas counsel may provide cause for failing to raise a claim of ineffectiveness of *trial* counsel is because, usually, a convicted defendant cannot raise ineffective assistance of counsel claims on direct appeal.

Here, the claim Mr. Miller is asserting in his habeas petition is *not* a claim of ineffective assistance of trial counsel which was then not raised by state habeas counsel. Instead, he asserts as error in his federal petition that the *trial court* erred when it denied the jury's request to re-listen to the recorded 911 call. See Docket No. 1 at p. 7. Martinez does not apply to claims of error by the *trial court.*

Secondly, even if Mr. Miller's federal petition could somehow be read to be asserting a claim of ineffective assistance of trial counsel (failure to object to

24

the trial court's ruling about the 911 call), which was then not raised by ineffective habeas counsel, the record defeats such a claim.  Mr. Miller's habeas counsel *did* raise the 911 call in habeas proceedings.  <u>See</u> HF, transcript ruling, at p. 29.  Habeas counsel then attempted to obtain a certificate of probable cause from the circuit court as to the 911 call issue.  That was denied.  Habeas counsel's failing, if any, was in failing to seek a certificate of probable cause *on appeal* to the South Dakota Supreme Court.  <u>Davila</u> makes clear that errors of appellate counsel do not constitute "cause" sufficient to excuse procedural default.  Accordingly, this court also recommends that respondents' motion to dismiss the 911 claim as procedurally defaulted be granted.

**E.    Jury Selection**

**1.    Trial Court Error**

The only claims Mr. Miller asserts in his federal petition herein that are available to this court to determine on the merits are his claim that the trial court committed structural error in selecting the jury and that trial counsel was ineffective for failing to object effectively to that error and failing to raise the error on direct appeal.  Mr. Miller does not dispute the facts regarding what occurred with regard to jury selection.  He asserts the South Dakota courts erred in their conclusions under the law.

Under AEDPA, this court may not grant a writ of habeas corpus to a state inmate unless the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law." 28 U.S.C. § 2254(d)(1). The state court's decision can only be deemed "contrary to" or an "unreasonable application of" federal law if it "confronts a set of facts that are . . . indistinguishable" from a Supreme Court decision and ends up with an opposite result. <u>Williams</u>, 529 U.S. at 405-06.

An error is "structural" and thus requires automatic reversal "only when the error necessarily renders a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." <u>Rivera</u>, 556 U.S. at 161 (cleaned up).

Mr. Miller's jury selection claim centers around the number of and execution of peremptory challenges. Peremptory challenges are ways to exclude a potential juror without the need to demonstrate any special reason or explanation. <u>See</u> https://www.law.cornell.edu/wex/peremptory_challenge, last checked Feb. 1, 2019. "The right to exercise peremptory challenges in state court is determined by state law." <u>Rivera</u>, 556 U.S. at 152. "[P]eremptory challenges are not of federal constitutional dimension." <u>Id.</u> (quoting <u>Martinez-Salazar</u>, 528 U.S. at 311).[8] States can deny peremptory challenges altogether without running afoul of the Constitution's guarantee of an impartial jury and a fair trial. <u>Id.</u> Because state law determines whether peremptory challenges will be given and, if so, under what circumstances, state law also determines the consequences of a violation of that state law. <u>Id.</u>

---

[8] This is subject to exception if peremptory challenges are used to exclude persons of the defendant's race or sex or the like. No such allegation has been made at any stage of Mr. Miller's case.

In the <u>Rivera</u> case, the defendant, a Hispanic, was on trial for murder in the shooting death of an African-American man. <u>Rivera</u>, 556 U.S. at 152-53. Rivera sought to use a peremptory challenge to strike a female nurse with a Hispanic-sounding name. <u>Id.</u> at 153. Because the juror appeared to be African-American, and Rivera had used three of his strikes up to that point to strike only women, one of which was also African-American, the court (out of the hearing of the jury), expressed concern about a potential problem under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). <u>Id.</u> The judge asked defense counsel to explain his reasons for wanting to strike the juror. <u>Id.</u> Dissatisfied, the court denied Rivera's attempt to strike the juror. <u>Id.</u> The juror ended up being seated and, in fact, was the foreperson on Rivera's jury. <u>Id.</u> at 154. Rivera was convicted of murder. <u>Id.</u>

Rivera appealed to the Illinois Supreme Court. <u>Id.</u> at 154-55. That court held the trial court should not have required Rivera's counsel to explain why he wanted to strike the juror nor should the court have denied Rivera the exercise of his peremptory challenge as to that juror. <u>Id.</u> However, the highest Illinois court held the error was not structural because Rivera failed to demonstrate he was prejudiced (that juror was not demonstrated to be biased), peremptory challenges are not guaranteed by the Constitution, and they are not "indispensable to a fair trial." <u>Id.</u> at 155. The Supreme Court affirmed unanimously. <u>Id.</u> at 156.

Rejecting Rivera's assertion of structural error, the Court stated:

> If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory

> challenge due to a state court's good-faith error is not a matter of
> federal constitutional concern.  Rather, it is a matter for the State
> to address under its own laws.

Id. at 157.

The Court expanded that there was no "freestanding constitutional right to peremptory challenges."  Id.  They are "creatures of statute" and states may refuse to offer them at all because they "confer a benefit 'beyond minimum requirements of fair [jury] selection.' "  Id. at 157-58 (quoting Frazier v. United States, 335 U.S. 497, 506 (1948)).

Because peremptory challenges are within the province of the states, a court's mistaken denial of such a challenge—without more—is merely an error of state law and does not rise to the level of a Due Process violation.  Id. at 158. The Rivera Court discussed and reaffirmed its decisions in Martinez-Salazar and Ross v. Oklahoma, 487 U.S. 81 (1988).  Id. at 158-59. In Ross, the trial court's error in refusing to excuse a juror for cause required Ross to use one of his peremptory challenges to get rid of the offending juror.  Ross, 487 U.S. at 87.  Ross complained this error deprived him of an extra peremptory challenge he would otherwise have had.  Id.  The Court rejected Ross' claim, noting the final composition of the jury consisted in no juror who was removable for cause.  Id.   The same facts occurred in Martinez-Salazar with the same result, this time in federal court.  Martinez-Salazar, 528 U.S. at 307, 316-17.

The Rivera Court did not explicitly spell out the "more" in addition to the denial of a peremptory challenge that a litigant would have to show in order to raise a Due Process claim.  But it hinted at the answer when it observed that

28

the judge in Rivera's case never "repeatedly or deliberately misapplied the law or acted in an arbitrary or irrational manner." Id. at 160 (citing Martinez-Salazar, 528 U.S. at 316; Ross, 487 U.S. at 91 n.5).

Concluding its holding, the Rivera Court stated: "Absent a federal constitutional violation, States retain the prerogative to decide whether such errors [in selecting a jury] deprive a tribunal of its lawful authority and thus require automatic reversal." Id. at 161-62. The Court noted that states may freely determine that state-law errors regarding peremptory challenges are harmless error, or that they require automatic reversal. Id. at 162.

The Rivera decision is dispositive of Mr. Miller's claim. Ultimately, he can show only that the trial court violated state law in selecting his jury. The only prejudice to him is the same prejudice expressed by Ross and Martinez-Salazar—the loss of a potential extra peremptory challenge. He has not attempted to show and cannot show that the jury actually impaneled was biased. Every juror who sat on his jury was passed upon for cause. He never demonstrates that the trial court acted arbitrarily, deliberately, or repeatedly. This case is determined by Rivera.

The South Dakota Supreme Court faithfully followed Rivera and its predecessors in this area of law. That court did not issue an opinion that is contrary to, or is an unreasonable application of, clearly established federal law. Accordingly, this court recommends granting respondents' motion to dismiss this claim without holding an evidentiary hearing.

### 2.    Ineffective Assistance of Counsel

Finally, this court addresses Mr. Miller's claim that his trial counsel was ineffective in failing to properly object to the jury selection and failing to raise the issue in his direct appeal.  The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it

cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009).

Finally, "[i]neffective assistance of counsel is a mixed question of law and fact and thus on habeas review a federal court is not bound by a state court's conclusion that counsel was effective." Whitehead v. Dormire, 340 F.3d 532, 537 (8th Cir. 2003). However, " 'state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d).' " Id. (citing Strickland, 466 U.S. at 698). That is, "[a] state court's findings of fact are entitled to a presumption of correctness." Miller v. Dormire, 310 F.3d 600 (8th Cir. 2002). Additionally, judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's

31

conduct falls within the range of reasonable professional conduct.  Strickland, 466 U.S. at 698.

Where a claim of ineffective assistance of counsel is made in a § 2254 petition, the already deferential standard of review of counsel's conduct is paired with the extremely deferential standard of review applicable to federal court review of a state court's rejection of a habeas claim to make the federal court's "highly deferential" review "doubly" so.  Harrington v. Richter, 562 U.S. 86, 105 (2011).  "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)."  Id.  The inquiry when a Strickland claim is raised in a § 2254 petition is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Here, it is clear Mr. Miller cannot sustain his ineffective assistance of counsel claim associated with jury selection because he cannot demonstrate prejudice.  As is evident in discussing Rivera above, Mr. Miller's deprivation of a peremptory challenge does not rise to the level of a constitutional violation almost as a matter of black-letter law.  Had counsel raised this issue, it would have been defeated by the same federal law ultimately discussed and applied by the South Dakota Supreme Court in its opinion.  If Mr. Miller cannot show that the claim had some chance of success, he cannot show prejudice.  The court recommends granting respondents' motion to dismiss this claim too.

## CONCLUSION

Based on the foregoing law, facts, and analysis, this court respectfully recommends granting respondents' motion to dismiss [Docket No. 11] in its entirety.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED February 5, 2019.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge